**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: November 1 2017

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 16-32259 |
| | ) | |
| Colin Bryce Fraser, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 16-3119 |
| | ) | |
| Teresa Renee Nadeau, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Colin Bryce Fraser, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding is before the court for decision after trial on Plaintiff's *pro se* "Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge." Defendant is the debtor in the underlying Chapter 7 case pending in this court. He is also representing himself in this adversary proceeding. In her complaint, Plaintiff alleges that Defendant should be denied a discharge under 11 U.S.C. § 727(a)(3) and (a)(4)(A) or, in the alternative, that a debt owed to her by Defendant as a result of a state court judgment should be excepted from discharge under 11 U.S.C. § 523(a)(6).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11. This proceeding has been referred to this court by the

district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts and objections to discharge are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I) and (J).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment in his favor on the complaint.

## FINDINGS OF FACT

Defendant is Plaintiff's former boyfriend and the father of Plaintiff's child. Indeed some of the testimony at trial bore aspects of an ongoing domestic dispute between the parties. Sometime in or around 2003, the parties were living together in California. Plaintiff was a paralegal, and Defendant was a member of a band called Mercury Legion. Defendant testified that, at that time, he idolized Jason Sears, the lead singer in the band RKL. He testified that "Jason Sears had value," and that he entered into a "two-song contract" with Sears. The court credits Defendant's testimony that Sears then convinced Plaintiff that she could make money by financing the recording of an album of songs sung by him with Mercury Legion as his backup band.

Pursuant to a $20,000 investment by Plaintiff, Sears and Mercury Legion recorded twelve songs, using music written by Defendant and lyrics that were rewritten by Sears. In October 2003, Plaintiff signed a License Agreement that states that Plaintiff, referred to as "CA Label," "desires to sell its product to customers and the general public" and that Malt Soda Recordings, Ltd. ("Malt Soda"), is in the business of marketing and selling such products. [Def. Ex. B21]. The product referred to is the Jason Sears and Mercury Legion compact disc ("the CD"). The License Agreement purports to grant Malt Soda a proprietary interest in the CD and the exclusive right to distribute and use its label on the CD, in return for which Plaintiff was to receive royalties equal to 33% of all sales, payable semi-annually.[1] [*Id.* at B21-B22]. Plaintiff testified that she signed the License Agreement in an effort to get the CD sold but has never

---

[1] Although the License Agreement includes a signature that purports to be that of Charles Buell, president of Malt Soda, that signature was not authenticated at trial.

2

received any royalty payments from Malt Soda.

Defendant paid Plaintiff $1,650.00 through 2004 as partial reimbursement for her investment in the making of the CD. [*See* Pl. Ex. 10]. When he stopped making payments, Plaintiff obtained a state court judgment against Defendant in a case in which he appeared *pro se*. Although the judgment and state court record (or any part of it) are not in evidence, Defendant's testimony at the meeting of creditors, [*see* Def. Ex. C, p. 9], and the parties' testimony at trial make clear that the judgment was based upon an oral contract whereby Defendant allegedly promised to reimburse Plaintiff in full for her investment. Plaintiff has tried to collect on the judgment by having Defendant's wages garnished at various times However, his wages, after the deduction for child support, have been insufficient to pay it off.

Plaintiff's exhibits two through six each show the CD and or individual songs from the CD being offered for sale on various internet sites, all under the label "Malt Soda." [*See* Ex. 2, p. 1; Ex. 3 (Malt Soda catalog); Ex. 4, p. 1; Ex. 5, p. 2; Ex. 6, p. 5]. Plaintiff's exhibit one shows Mercury Legion's album entitled "It's A Wonderful Life" being offered for sale at mytexasmusic.com. According to Defendant, that album was released over ten years ago by Cinque Entertainment and "it was supposed to be completely out of print." [Def. Ex. C., p. 9]. Defendant testified that he signed an original contract for Its A Wonderful Life " pressings" but never received any royalty payments or an acknowledgment that it is still on the market. [*Id.*].

On December 20, 2014, Defendant made available a short "sales demo" video on youtube.com entitled Waiting Room 351. [*See* Pl. Ex. 7]. The statement accompanying the youtube video states that "this footage is copyrighted (just like anything from Mercury Legion) so if you want to do business, e-mail me because I'm always ready to discuss such possibilities in a legal fashion!" [*Id.*]. In explanation of the video, Defendant testified at the meeting of creditors that "when you have friends in the industry, you make a, basically a short film" and "your friends look at the film . . . to see if there's any interest from outside parties, with the possibility. . . of getting jobs." [Def. Ex. C, p. 9].

Sometime after January 25, 2015, an entry on Mercury Legion's facebook page states that the Mercury Legion name had been kept "under the radar" in the hopes of "a rather lucrative deal being discussed (back catalogue release and possible reunion tour)" but that "[s]adly it did not work out." [Pl. Ex. 8, p. 1]. It further states that youtube videos were being assembled "so that we can give those of you who didn't experience us live the first time around a chance to relive some of our memories as well as hopefully garner some renewed interest in a possible reunion." *Id.* In other words, Defendant was trying to get the band back together again. Defendant testified, credibly so, that he failed ultimately to make a name for

3

Mercury Legion and lost money trying to do so.

On July 15, 2016, Defendant filed his petition for relief under Chapter 7 of the Bankruptcy Code. His bankruptcy Schedule I shows income only through his employment as a general laborer.[2] [Doc. # 1, pp. 23-24/45]. On Schedule A/B, Defendant states that he owns a "patent for song I wrote - never received any money for it." [*Id.* at 12/45]. At the meeting of creditors, Defendant testified that it is actually a copyright on a song, and that he has "never received a royalty in [his] life." [Def. Ex. C, p. 4-5].

Defendant includes Plaintiff on Schedule E/F as a creditor holding a priority claim in the amount of $7,246.00 for unpaid child support and a nonpriority claim for the judgment debt in the amount of $49,657.68. [Doc. # 1, pp. 18-19/45]. According to the "California Child Support Self Service" website, the total amount owed by Defendant for current and past due support on October 14, 2016, is only $627.57. [Pl. Ex. 9].

## LAW AND ANALYSIS

Under 11 U.S.C. § 727, an individual debtor is entitled to a discharge unless one of the ten enumerated exceptions to discharge specified in that section is established. Consistent with the fresh start policy underlying the Bankruptcy Code, exceptions to discharge must be construed strictly against the objecting creditor and liberally in favor of the debtor. *Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582, 586 (6th Cir. 2013). The party objecting to discharge has the burden of proving by a preponderance of the evidence that an exception applies, *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). Plaintiff objects to Debtor's Chapter 7 discharge pursuant to § 727(a)(3) and (a)(4)(A).

Alternatively, Plaintiff seeks a determination that the judgment debt owed to her by Defendant is nondischargeable under 11 U.S.C. § 523(a)(6). A creditor must also prove exceptions to dischargeability for individual debts under § 523(a) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

**I. 11 U.S.C. § 727(a)(3)**

A debtor will be denied a discharge if he has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this provision is "to give creditors and

---

[2] The court takes judicial notice of the contents of its case docket and Defendant's bankruptcy schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992); *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999). It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Meridian Bank,* 958 F.2d at 1230.

Plaintiff has the initial burden of proving Defendant's lack of records within the meaning of § 727(a)(3). *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 829 (Bankr. N.D. Ohio 2004). In order to meet her burden, she must (1) offer evidence of the general nature of Defendant's business or personal financial position and the types of transactions about which recorded information is sought, (2) present evidence identifying the recorded information she alleges has been concealed, destroyed, mutilated, falsified or not kept or preserved by Defendant, and (3) show how the missing recorded information "might" enable Defendant's actual financial condition or business transactions to be ascertained under the circumstances of the case. *Id.* at 833. Once Plaintiff's initial burden is met, the burden of proof shifts to Defendant to justify the lack of records. *Id.* at 829. Although the Bankruptcy Code does not specify what constitutes justification, it requires the court to make a determination based on "all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

In this case, Plaintiff has not met her burden under § 727(a)(3). She contends that Defendant actively continues to sell the CD she invested in and is refusing to keep or concealing records from which such activities and their results can be determined. To that end Plaintiff offered documents showing that music involving Mercury Legion was being offered for sale on six different websites. However, the evidence shows that five of those sites involved Malt Soda offering for sale the Jason Sears and Mercury Legion compact disc and individual songs, not Defendant. And the License Agreement signed by Plaintiff giving Malt Soda the right to sell those songs gives Plaintiff, not Defendant, the right to royalty payments relating to any such sales. The documents admitted do not connect these internet offerings of the CD to Defendant and no other evidence doing so was presented.

Plaintiff also offered an exhibit showing Mercury Legion's Its A Wonderful Life being offered for sale at mytexasmusic.com. There is no indication, however, as to who is offering it for sale and, thus, no basis for determining that Defendant would or should keep recorded information regarding any such sale. There is also no evidence that Defendant ever received any payment for which a record would or should be kept relating to such sales.

At trial, Plaintiff also argued that her § 727(a)(3) claim is based on Defendant's failure to reveal his

5

copyright with respect to the youtube sales video, Waiting Room 351. However, § 727(a)(3) deals with "recorded information" that a debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve." 11 U.S.C. § 727(a)(3). There is no evidence that Defendant was unable to produce any record of his copyright or that such recorded information was even sought. Rather, Plaintiff testified that a pre-trial request of Defendant for the production of documents would have been too time consuming.

As the record is insufficient to find that Plaintiff showed that any recorded information was concealed, destroyed, mutilated, falsified or not kept or preserved by Defendant, Defendant is entitled to judgment in his favor on this claim.

## II. 11 U.S.C. § 727(a)(4)(A)

Under § 727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case. . .made a false oath or account[.]" In order to prevail, a plaintiff must prove, by a preponderance of the evidence, that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Keeney,* 227 F.3d at 685. "'[Courts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Id.* at 686 (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987)). However, a debtor is entitled to a discharge if false information is the result of mistake or inadvertence. *Id.*

Plaintiff first relies on Defendant's failure to schedule any copyright as an asset of his bankruptcy estate. He did, however, schedule ownership of a patent for a song that he wrote. When asked about the patent at the meeting of creditors, he corrected himself and testified that it is actually a copyright. Nevertheless, he did not include in his schedules his copyright for the sales video that he posted on youtube.com. While a failure to list property interests on bankruptcy schedules may constitute a false oath, *see id.*, Plaintiff has not met her burden of showing fraudulent intent. There is no evidence that Defendant has ever profited or even that there is any likelihood that he will profit from the sales video posted on youtube in 2014. While that does not excuse him from including the copyright in his bankruptcy schedules, *see Lorocco v. Smithers (In re Smithers)*, 342 B.R. 384 (Table) (B.A.P. 6th Cir. 2006) (stating that "debtors must disclose all assets, even those that they believe are worthless," and citing *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)), it is relevant to his intent in not including it in his schedules. The court finds that it is more likely than not that such omission was inadvertent and not done with fraudulent intent.

6

Plaintiff also points to and questions Defendant's testimony at the meeting of creditors that he has never received any royalty payments for his music. However, Plaintiff offered no evidence, and the court will not surmise, that he did in fact receive royalty payments.

Finally, Plaintiff points to Defendant's scheduling the child support debt owed to her in the amount of $7,246.00 rather than $627.57 as set forth on the California Child Support website on October 14, 2016. However, Plaintiff offers no evidence that Defendant knew the correct amount owed or from which the court can infer that overstating what he owed was done with fraudulent intent.

As Plaintiff has failed to meet her burden under § 727(a)(4)(A), Defendant is entitled to judgment in his favor on this claim.

### III. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. 11 U.S.C. § 523(a)(6). In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001).

Addressing the "willful" requirement of § 523(a)(6), the Supreme Court agreed that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Supreme Court found that a more encompassing interpretation could place within the excepted category a variety of situations "in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor," including a knowing breach of contract. *Id.* at 62. The Court explained that such a broad construction "would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Id.* (citing *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

In this case, Plaintiff argues that she obtained a judgment against Defendant based on his agreement to repay her the money she invested in the making of the Jason Sears and Mercury Legion album, that Defendant is selling the CD and has not voluntarily made any payments on her judgment against him. The court finds that Plaintiff has not shown that Defendant is selling the CD or is making any profit from selling any of his music. Furthermore, there is no evidence that the underlying nature of the debt owed by

7

Defendant is anything other than one for breach of contract. The fact that a party has breached a contract by not voluntarily paying the consideration due, even if done intentionally, will not independently support a finding of nondischargeability under § 523(a)(6). *Ward v. West (In re West)*, 446 B.R. 813, 817 (Bankr. N.D. Ohio 2010) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)); *see Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 8, 2004 WL 1544066, *6 (6th Cir. 2004) ("Consistent with *Geiger*, we have held that a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6)."). And the mere failure to pay a debt in breach of an agreement to do so, even when a judgment has been entered on the debt, does not state a basis for exception of a debt from discharge under § 523(a)(6). *Heintschel v. Smith (In re Smith)*, No. 12-34213, Adv. No. 12-3210, 2013 WL 522919, *1, 2013 Bankr. LEXIS 578, *3 (Bankr. N.D. Ohio Feb. 12, 2013). Defendant is thus entitled to judgment in his favor on this claim.

## CONCLUSION

Finding that Plaintiff has not met her burden of proof on her claims under 11 U.S.C. § 727(a)(3) and (a)(4)(A) and under 11 U.S.C. § 523(a)(6), judgment on the complaint will be entered in favor of Defendant. The court will enter a separate judgment in accordance with this Memorandum of Decision.

###

8

16-03119-maw    Doc 20    FILED 11/01/17    ENTERED 11/01/17 13:50:26    Page 8 of 8